We've got a little roving this morning, so after the first case, we'll take a break and continue shortly thereafter. The first case for argument this morning is 18-2259, In Re Escobosa. Mr. Lucas, whenever you're ready, good morning. Good morning. James Lucas on behalf of the Escobosa appellants. May it please the Court, we would ask that Claim 1 of the 761 application be allowed. I ask this Court to reverse the Board and find the claim patentable. As shown in our briefing, we think the Board has failed to meet its prima facie burden of showing the obviousness of Claim 1 based on Akemik and Allport. The Board's decisions are missing significant factual findings regarding the disclosure of the... Is that because there were no findings made or simply because you're in disagreement with whether or not the Board could incorporate the examiner's analysis and adopt it as its own? I think it's both, actually. I think definitely there were no findings made in the Board's decision. Even if you look at, if you say the Board incorporated the examiner's findings, I still believe the Board's decision is lacking because the examiner failed to make factual findings on disclosure of multiple limitations and also on a motivation to combine. So I think it applies both ways. Even if the Court were to find that both Board decisions incorporated every finding of the examiner, the decision still is lacking and the Board still did not meet its burden of making a prima facie case. Why don't you talk a little about the motivation issue? Okay. Yeah, that's a pretty easy one. You can go to, there's no doubt that the Board never even discussed that. I can take you to the initial decision, 258 through 263, motivation to combine is never even discussed. The same with the rehearing decision. But let's start with the assumption that we're going to let the Board incorporate what the examiner does. Okay. So with the assumption that the, I just want to make clear the Board doesn't even discuss it. Then we can go to the, we go to the examiner's final office action and it's extremely cursory and does not provide what this Court requires to find a motivation to combine. Look, we review decisions, not opinions. And why wasn't the Board correct? You've got first data and second data. In the first data, our disclosure of the plurality of devices in the second data functions, right? And aren't these both in the two references? Kemink and Alport? And that's why the Chief Judge was trying to direct you to motivation, which seemed to have gotten lost. I do want to talk about the motivation to combine, but I don't believe we can, I don't believe the first and second data are disclosed in the reference. But more importantly, the later limitations, the selection limitation and the pre-programmed sequence limitation are also not disclosed. Because what we believe the examiner and the Board did is just read the claim kind of in a vacuum, just talk about the data, the first and second data. That's not enough. What this claim requires is you have a web server, you need to take the first data, which has to identify multiple control products, multiple control devices. We don't even think that was shown by Kemink. Because in Kemink, what you're doing is you're just clicking on one device, a listing of a device, and you're just downloading the GUI for that device. Okay, so that's not disclosed. Secondly, the second data, you need to identify an activity or multiple activities performed by all these devices that have been identified. Then what you do is after you use that first and second data to select from a database a pre-programmed sequence, so more instructions that have been pre-programmed. And what that does is that allows multiple devices to be controlled for a certain activity or multiple activities, actually. So we don't think, if you look at the Board's decision, you look at the examiner's decision, they don't even address that selection step. They don't even address the pre-programmed sequence step. So we would say that the examiner and the Board's decision are completely lacking in showing disclosure of all the claim limitations. I did want to get to the motivation to combine, though, because I think that's also extremely insufficient. If you look at 146, appendix 146, this is the first time the examiner talks about it, and then he repeats it later on in the final office action. It says, it would have been obvious to one of our areas of skill in the art to modify the system of CHEMIC as disclosed by Allport because this provides for a flexible and adaptable remote control device that can be configured based on various users' preferences and control options. There's no reference to any of the – that's just grossly insufficient for a motivation to combine under the Court's precedent. It's conclusory. It's not supported by any reference to the prior art. We would say that the decision fails and should be reversed based on that alone. And then just touching on that, if you go right below that on 146, and this is – these findings are repeated in the final office action, but the discussion of those two other limitations is at 145, and that's the selection and the pre-programmed sequence. You can see there, there's not even a – there's no real reference. It's just a repeat at 145 of the claim language. There's no, I guess, discussion of where these items are disclosed in the prior art. So just – I wanted to – I mean, I think it's our position. The Board's decision is completely insufficient to the extent the Court wants to look more at the final office action, again, also insufficient in that it didn't show disclosure of any of all the limitations and didn't show a motivation combined that the Court requires. Basically, it very summarily talks about motivation combined, avoids multiple limitations, and just very insufficient under, for example, some of the cases we cited, INRE, DEM, BICZAC, which is 175F3, 1994. Judge Mayer should be familiar with that case where it's very clear that the Court found that the obviousness finding was just grossly insufficient and the motivation to combine was not supported. Again, also in INRE, GIANELLI, 739F1375, there was no explanation of – and Judge Lori should be familiar with this case – no explanation of why or how a person of ordinary skill in the art would modify the prior art. It isn't useful to try to pinpoint any decisions of this Court with judges. Okay. We write on behalf of the panel, on behalf of the Court. Understood. The point really is that there's no how and why on the motivation to combine. Nothing whatsoever. That's very clear from the final office action. The examiner just summarily talks about remote controls in general and says it was obvious to combine the two references, and that's just not enough based on the Court's teachings. Again, also insufficient factual findings regarding disclosure of the combined prior art. If there's no further questions. Thank you, Your Honor. Good morning. Good morning. Your Honors, and may it please the Court. Appellant's focus is on disputing the Board's factual findings regarding the teachings of the prior art. However, substantial evidence supports that the combination of Kemmick and Alport disclosed each of the claim limitations. It's pretty thin, though, right? The Board's decision, correct, is – Yeah, but your position is it doesn't matter because they've incorporated the examiners. Correct. As this Court has said in In Re Cree, it is appropriate for and commonplace for the administrative body to incorporate the fact-finding body's findings, and that's exactly what the Board did here. So they incorporated the examiner's final rejection. Did they ever say that? Did they state they were incorporating the examiner's final rejection? So there's not the word incorporate or adopt, and my understanding is that this Court's precedent does not require specific magic rules, but they do indicate that they are relying and agreeing with the examiner's rejection. Show me. Certainly. If you start at page Appendix 6, and in the middle of that page, they say, We do not find Appellant's arguments persuasive and agree with the examiner's findings. Then they quote the claim and cite the final action, pages 5 through 7. Then continuing at, if that was not clear enough, in their rehearing decision at Appendix 10, they say in the second to the last sentence of the first full non-quote paragraph, they say, In our decision, we cited to the final action for the relied-upon teachings to address the disputed limitations, citing to the page that I just talked about, and again citing to the final actions at page 5 through 7. And looking at this Court's precedent in In re Cree and In re Hyatt, this language, for example, in In re Hyatt, the board there just said, We affirm for the reasons of the examiner, and this Court said that that was considered adopting the examiner's rejection. So there's not a magic word that needs to be used as far as we incorporate or we adopt, but based on this Court's precedent, I believe saying we agree with and citing to the exact pages twice, both in the board's decision, the first decision and the rehearing decision, is sufficient to apprise this Court that they were adopting the examiner's rejection. Taking the examiner's rejection, they did lay out where each of the limitations was disclosed, and they provided additional detail, and then the board adopted that and provided additional detail in response to the arguments. And the examiner also provided a motivation to combine the references, which was not conclusory or insufficient. Indeed, it was to provide a flexible and adaptable remote control suitable for a user's preferences and control options, and that flows directly from the teachings of the prior art. If you look at appendix page 168, and that is where the examiner addressed the motivation to combine, they start in the middle of the paragraph talking about Chemic presenting a plurality of graphic user interfaces, and the user is given a choice. That's talking about the user's preference. It then goes on and talks about Alport, which is the second reference, and talks about the control options that they want to use. And then that ends, that whole entire discussion ends, with the motivation discussing the fact that they want to provide, that one would be motivated to provide a flexible and adaptable remote control configured based on user's preferences, and that's discussed in Chemic, and control options, and that's discussed in Alport. This was never disputed by appellant on appeal to the board. We just mentioned that in our opening brief, and they did not point to any place in the reply brief where they disputed the motivation to combine, said that this was insufficient, said that more was needed, and therefore that explains why the board adopted the examiner's rejection. It was not in dispute before the board. That sentence is a very odd sentence, right? The one on 168, it would have been obvious to one with ordinary skill in the art to modify the system of Chemic, as disclosed by Alport, because this provide, I don't know what this is, for a flexible and adaptable remote control device that can be configured based on various, there's something missing in that sentence, right? There's a few words missing, I would say, based on various user's preferences, or missing an S on the word provides. However, I believe that the, while not completely clear, the past can be easily discerned by what the examiner was saying, that you can get the idea of why this was motivation, and again, this was never disputed before the board. As the appellant's counsel pointed out, this was stated in the rejection, which he pointed to before the final rejection, and then this was cited in the final rejection. It was not mentioned in the appeal brief. It was not mentioned in the reply brief. All they argued was that if you combine them, it would lead to something different. They never said there was not a motivation to combine. You're saying that while this was not the board's finest hour, it was correct. That's correct, Your Honor. Both, Your Honor, both the past can be discerned of what the rejection was, and taking all three decisions together, the board's final rejection, excuse me, the examiner's final rejection, the board's decision, and the rehearing request, those three together, those three papers, are sufficient to apprise this court of what the basis and the grounds of rejection are to enable judicial review. So if the board is going to incorporate the examiner's final rejection and not provide any of its own independent analysis, why would a party ever try to have a final rejection review? I think if in this, they may not always just incorporate the final rejection, and that's the step to getting to this court. If they felt that the board was insufficient or the examiner's insufficient, they can still raise those issues to this court. But the idea is that that's the process that happens. You appeal the final rejection to the board. The board may not adopt completely, and there's many cases that they do not, and the board either reverses or provides additional explanation. They don't always just completely incorporate. And then that's also a step in getting to this court, where if the incorporation was lacking, as Appellant's counsel pointed out, the Imre Dimvizak case, there was absolutely no motivation to combine. So that's different. Here there was a motivation to combine, but in that case they came all the way up to this court, and the court said, no, there's no motivation. Go back. So that would be why there still is a motivation, pun not intended, to come to this court and appeal to the board first. With respect to a few of the arguments made by Appellant's counsel, with respect to the first data, CHEMIC does disclose a list of appliances that was cited by the examiner, and it's very clear from the reference itself. And with respect to the fact that a user selects one appliance out of that, there's no exclusion in the claim language on user involvement. A user can be involved. In fact, Appellant's specification is replete with examples of a user selecting different options. There's no exclusion on a user selecting. The server, the web server, just has to use it in some fashion. And here they use this first data, this list of appliances, by displaying it. That is a use. It's within the broad language of the claims. With respect to, finally I'd like to address the In Re Ginelli case, with respect to motivation to combine. That was a different situation there. There was a physical combination. They were, the board was trying to modify a pushing device to make it a pulling device, and the only analysis was that one would be capable of doing so. That is not the situation here. The examiner did not rely on mere capability without explaining how such non-intuitive physical modification would be made. Here, they combined two very well-known pieces of art, both directed in the same area of Appellant's claims, the universal control device area, programming universal controls, talking about how and why one would ought to do this. And they combined them and articulated a clear motivation to combine. So it's not like the In Re Ginelli case where they were relying on a mere capability of doing this. They gave a reason. And if your honors have no more questions, thank you. Just briefly, there was some discussion about that the no motivation to combine argument was never raised before the board, and that's incorrect. If you look at Appendix 200, the argument was made by the appellants that the examiner had not made a motivation to combine finding. Regarding the motivation to combine finding, I mean, we're looking at the final office action is Appendix 168. And it's three lines, and really what it's saying is it doesn't even take into account any of the limitations that were discussed, the first data or the second data, or it doesn't mention that at all. It really, if you look at it, is saying they should be combined because they both relate to remote controls. That's just really not enough. I mean, they're saying both pieces of art relate to remote controls, so they should be combined. And that's just grossly insufficient. Isn't there a normal motivation within the field to improve a device and to incorporate a feature that's in the same kind of device to make it more convenient? I mean, are you just saying, if you're asking would one-off skill in your art just normally be motivated to look at other art? I mean, I think that generally is true, but I think our case law is very clear that that's just saying you would just look at other art is not enough. You need to actually detail the explicit motivation to combine when you're combining these two references and how it arrives at the claimed invention. They just have not done that. That site doesn't even reference the art, doesn't even reference one-off skill in the art. It does reference one-off skill in the art, but it doesn't talk about just common knowledge, and it doesn't key on what the examiner has said was in the art that they would use to combine. So I think that's another reason it's insufficient. I mean, and to be clear, there was a lot of discussion about incorporating the examiner's actions. The examiner's actions are also insufficient on the factual disclosure findings, and we made that clear in the brief. It's not just, if I had to summarize, what they're really saying is what the examiner says over and over again and the board just adopts is, well, one piece of art has the ability for you to just select a product to be controlled, and another piece of art has the ability to program an activity. That's it. That's really all they talk about, and they say the entire claimed invention is obvious based on those two disclosures. Okay, that's not enough. If you actually look at the claim, this is a much more complex claim that is very interrelated and has later limitations, and I say that because I still don't believe CHEMIC even discloses multiple devices. We're talking about a system where you can basically program an activity that's going to control multiple devices and multiple activities, and then a server is going to use that and take preprogrammed sequences to control all these activities and all these devices once you press a button, and that is not disclosed in either of those references or the combination. And so we would say we would ask this court to reverse the finding of unpatentability based on obviousness and allow claim one and its depending claims to be found patentable. Thank you.